UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| Mister Money Inc., | Civil Action No. |
| *Plaintiff*, | |
| - against - | **COMPLAINT** |
| Tyreke Rieco Rogers p/k/a Lil Double 0 and Wilburn Holding Company, Inc. d/b/a Freebandz Entertainment. | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

------------------------------------------------------------------X

Plaintiff Mister Money Inc. ("Mister Money" or "Plaintiff"), by and through its undersigned counsel, complaining of Defendants Tyreke Rieco Rogers p/k/a Lil Double 0 ("Rogers") and Wilburn Holding Company, Inc. d/b/a Freebandz Entertainment ("Freebandz," and, collectively with Rogers, "Defendants") alleges as follows:

## NATURE OF ACTION

1. This action seeks to redress the damages that Plaintiff has suffered as a consequence of Defendants' wanton, and ongoing, infringement of Plaintiff's copyrights.

## PARTIES

2. Plaintiff is a New York corporation with a principal place of business in Sloatsburg, New York.

3. Defendant Tyreke Rieco Rogers p/k/a Lil Double 0, upon information and belief, a resident and citizen of Florida.

4. Defendant Wilburn Holding Company, Inc., upon information and belief, is a Georgia corporation with a principal place of business at 922 Highway 81, Unit 321 in Decatur, Geogia.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) because Plaintiff's claims arise under the Copyright Act, Title 17, Section 101, *et seq.*, of the United States Code.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400.

## FACTS

7. Non-party Tyler Macklin ("Macklin") is a music producer and who works directly with other artists in the recording studio to develop, shape, and create original songs. He often works under the professional name "Mack House Entertainment."

8. In or about January 2019, Macklin first met with Defendant Rogers, who eventually invited Macklin to assist, engineer, and produce for him in the recording studio and participate in creating original songs with him.

9. From the first session forward, Macklin and Rogers worked together closely and consistently to create original music. In the studio, Macklin and Rogers collaborated in real time, side-by-side.

10. Macklin handled the creative and production components of the session, including the engineering, directing the flow, shaping the sound, and building the musical foundation for each composition. At the same time, Rogers recorded the vocal elements and contributed his ideas as the artist.

11. The songs produced in this manner came into existence through this joint process. For these songs, Macklin and Rogers did not rely on pre-made recordings or hand-off partially-finished works to others. Rather, they collaboratively developed each composition in the room.

12. For example, in the song that later became known as "Jazz," Macklin created an early version of the song using virtual instruments that he also created. From there, Rogers prepared lyrics and recorded the vocal portions during the recording sessions.

13. Over the course of our work together, Macklin produced dozens of works for Rogers. Based on their collaborative work arrangement, Macklin understood the works to be co-creations in which he was a 50-50 co-author. The music that Macklin created with Rogers reflects their shared, joint artistic efforts, combining his performance and artistic identity with my production, creative direction, and musical development.

14. Thereafter, Macklin entered into written agreement with Plaintiff Mister Money's predecessor-in-interest by which he assigned all of his interests, including the copyrights, in various compositions to Mister Money's predecessor-in-interest. Mister Money has since been assigned all of those interests.

15. As is relevant here, Macklin assigned the copyrights to the songs *007*, *Jazz*, *G6*, *G6 Pt. 2*, and *Ooh Okay* (the "Stolen Works").

16. Macklin and/or his representative have since registered copyrights for each of the Stolen Works. Specifically:

    a. *007*, *G6*, *G6 Pt. 2*, and *Ooh Okay* are registered with the Copyright Office pursuant to registration number SR 1-048-742, with an effective registration date of December 9, 2025.

    b. *Jazz* is registered with the Copyright Office pursuant to registration number PA0002554540, with an effective registration date of November 18, 2025.

17. Without permission from Macklin or Plaintiff, Rogers and Freebrandz began exploiting the Stolen Works commercially.

18. In large part due to Macklin's contributions, each of the Stolen Works has become wildly successful.  For example, the song *007* has earned more than 32.6 million streams on Spotify and millions of additional views on YouTube, while *Jazz* has earned more than 18.5 million streams on Spotify, and millions of additional views on YouTube.  None of the Stolen Works has received fewer than 3 million streams on Spotify.

19. Unfortunately, while Macklin's songs, such as *Jazz* have made Rogers a star, he and Freebrandz have refused to honor Plaintiff's rights in these works, including by failing to credit Macklin as a producer and paying the royalties owed to Plaintiff.

20. Upon information and belief, Defendants are believed to have received in excess of $1.5 million from their exploitation of the Stolen Works.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (Copyright Infringement Against Defendants)

21. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

22. Defendants have infringed the copyright in each of the Stolen Works by commercially exploiting these works without authorization and without compensating Plaintiff.

23. Defendants have published, manufactured, and distributed copies of each of the Stolen Works, but never paid Plaintiff nor secured Plaintiff's permission to do so.

24. As a direct and proximate result of Defendants' infringement, Plaintiff is entitled to its actual damages in addition to Plaintiff's share of Defendants' profits that are attributable to the copyrighted material, which amount is believed to be at least $1.5 million.

25. In the alternative, Plaintiff is entitled to recover statutory damages for Defendants' willful infringement of these copyrights.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (Declaratory Judgment Against Defendants)

26. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

27. As set forth above, Plaintiff is a co-author in each of the Stolen Works.

28. Based on the foregoing facts, an actual and present controversy exists concerning the parties' respective rights in the Stolen Works, including because Defendants continue to act in contravention of Plaintiff's rights.

29. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff is entitled to a declaration establishing that it is the 50% owner in each of the Stolen Works.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby requests that the Court grant the following relief:

a. Judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount to be determined at trial, but in no event less than $750,000, plus pre-judgment interest;

b. A declaration that Plaintiff is the 50% co-owner and author of each of the Stolen Works;

c. Plaintiff's costs and disbursements incurred in this suit;

d. Plaintiff's attorneys' fees to the full extent permitted by law; and

e. Any such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       December 12, 2025

By: _____
Andrew L. Kincaid
KINCAID LAW PLLC
*Counsel for Plaintiff*
152 West 57th Street, 8th Floor
New York, New York 10019
Tel.: 646.780.8063
*akincaid@kincaidpllc.com*